Sneed, J.,
delivered the opinion of the Court.
The complainant is a married woman and sues by her next friend to enjoin and prevent the sale of a crop of corn which has been levied upon at the suit of the defendant Corley, to satisfy a judgment against the husband of the complainant. The husband is made one of the defendants in the bill. The crop levied upon was the crop of 1868, and it was levied upon as it stood ungathered in the field, in the month of November of that year. The day of the month upon which the levy was made is not stated in the bill. The complainant claims the crop as her own separate property, produced upon land which she held as a separate estate, free from the control and not subject to the debts and liabilities of her said husband. The bill alleges that the complainant was residing with her husband and her four children upon the land, and that *3 tbe crop had been made by the labor of certain freedmen hired by her husband as agent for herself, under a contract which gave her one half of the crop produced by said labor, and the other half to the said freedmen. The half of the crop so claimed by her was the portion sought to be reached for the satisfaction of her husband’s debt to the defendant. She alleges that her husband is insolvent, and that the usufruct of her said land is her only means for the subsistence of herself and her children. As the evidence of her title to said tract of land, she exhibits a title bond, from which it appears that she had bought the land by an exchange of land inherited from her father, and upon a promise by her to pay a balance in money, upon the payment of which the bargainor covenanted to make her a sufficient warranty deed, as her sole and separate property and her heirs — reciting that he, the bargainor, had sold the land to the complainant as her separate property and that of her heirs, “free from the control of her husband.” The complainant prays that her rights in said land and her interest in the crops and profits thereof be stated and declared; that she and her children may be protected in the use and enjoyment thereof, and that the sale of the crop so levied upon be perpetually enjoined.
The defendants demurred to the bill, and assigned as causes of demurrer, that the bill on its face shows that the court has no jurisdiction of the subject-matter in controversy; that corn standing in the field after the 15th November is subject to levy, and that the complainant has a clear remedy at law. The demurrer *4 was disallowed .by the Chancellor, and the defendants have appealed.
The question presented is, has the complainant a separate and independent estate in the land so bargained and sold to her, which excludes the marital right of the husband to participate in the profits and products of the soil, under the facts presented in the bill? No artificial form of words used in an instrument of conveyance is necessary to create a separate estate in a married woman. It. is sufficient that the intention to exclude the marital right of the husband be manifest, whether the most appropriate or technical words be used in the instrument or not.
The obvious import of the words used in the instrument here, “to be her sole and separate, property and her heirs, free from the control of her husband,” is to create a separate and independent estate in the wife and to exclude the marital right of the husband in the lands. If the estate be conveyed to the wife without these words or equivalent operative words to create a separate estate, then the husband takes an interest in the land in right of his wife, and during their joint lives the law confers upon him the right to the crops, profits and products of the land — the usufruct is his; and upon the death of the wife, if issue has been born of the marriage, then the four requisites of marriage, seizin, issue and death of the wife, have combined to vest in the husband an estate for life, by the curtesy. He is, pending the marriage, said to be seized of the freehold jure uxoris. In the parlance of the old law pleaders, to describe the husband’s interest: *5 “The husband and wife are jointly seized in right of the wife. The marriage has entitled him to the personal goods and chattels of the wife and her ehoses in action, when reduced to possession, and the rents and profits of her real estate. As governor of the family, he is said to be so far master of it as to receive the profits of her real estate during her life.” Vide Bac. Ab. Baron and Feme: 1. Roper on Husband and Wife, ch. 2. He has acquired by the marriage the usufruct of all the freehold estate of the wife— that is to sa5T, of all her lands, tenements and here-ditaments which she has in fee simple, or for life, during the coverture. This estate is a freehold estate in the view of the law, being an estate for life, since it may possibly last during his life, and having no certain determinate period. The fee of the land, however, still remains in the wife:- Beeves Horn. Bel., 87. At common law the husband might sell and convey his estate by the curtesy: Trash v. Patterson, 29 Maine, 502; Reeves, 87. And such a conveyance was valid to the extent of the husband’s interest, and vested his life estate by the curtesy in the vendee, and a disseizin of both would follow. But the conveyance of the fee of his wife’s estate would pass his life estate and no more: Miller v. Shackelford, 3 Dana’s Ky. R., 291. He is forbidden, however, by the statutes of this State from selling his wife’s real estate during her life, without her joining in the conveyance in the manner prescribed by law. Nor can his interest in the real estate of his wife, acquired by her either before or after marriage, by gift, devise, descent, or in any other mode, be sold *6 by virtue of any judgment, decree or execution against him; nor shall the husband and wife be ejected from or dispossessed of such real estate of the wife by virtue of any such judgment, sentence or decree: Code of Tenn., s. 2481. The exemption, however, of the husband’s interest in his wife’s lands from sale shall not extend beyond his wife’s life: s. 2482. This statutory provision abrogates the rule of the common law, that the tenant by the curtesy initiate, might, without the consent of the wife, dispossess her of her estate. In some of the States, the statutes have gone even farther than this, and abolished the husband’s usufruct of the wife’s freehold during coverture: Vide Dunlop’s Laws of Penn., 1124, 1125; Statutes of Minnesota, 1849, 1858, c. 571, s. 106; Compiled Statutes of Mich., 1857, c. 73; General Statutes of .Mass., i860, c. 108; Rev. Statutes of Wisconsin, 1858, c. 95, s. 2; Id. Ind., 1852, c. 52; Id. Miss., 1857, art. 23.
But it is a settled doctrine of the law that a husband can not be tenant by the curtesy of the separate estate of his wife: Vide Otway v. Hudson, 2 Vern., 583; Williams v. Wray, Id. 681; Sweetapple v. Benden, Id., 536, Cunningham v. Moody, 1 Ves., 174; Dodson v. Hay, 3 Bro. Ch. R., 404; Houghton v. Hapgood, 13 Pick., 104; 1 Cruise Dig., 113; Reeves’ Dom. Rel., 93. And for the obvious reason that one of the essential requisites to constitute an estate by the curtesy is wanting — that of seizin — there can be no such thing as a joint seizin of husband and wife in right of the wife in her separate estate. The husband is neither in law or equity seized of the separate estate of his wife. The *7 seizin in law and equity alike remains in the wife. And tbe marital right which, on behalf of the husband, attaches at once by the marriage to the land of the wife in which she has the inheritance or the fee merely, and which makes the husband by the concurrence of the marriage and his seizin of the freehold jure uxoris, a tenant by the curtesy initiate, is expressly precluded by the terms of the instrument which ci’eates the separate estate. As to such separate estate the wife is a feme sole. The marriage has conferred no right of joint seizin upon the husband; but the estate and the seizin alike are both in the wife as fully and completely as if the vinoulum of the marriage were broken, or the marriage had never taken place.
Thus, in the case of Hearle v. Greenbank, Lord Hard-wicke said: “As to the claim by the assignee of the rents and profits during the bankrupt’s life, I am of opinion he is not entitled to be tenant by the curtesy upon the ground of the husband’s having no seizin in law or equity.”
By the father’s will the whole legal inheritance was vested in the trustees, and though said to be determined in Cashburn v. English, that the husband may be tenant by curtesy of a trust in equity; yet, first, the wife must have the inheritance; secondly, there must be a seizin of the freehold during the coverture. That the wife had the inheritance is true, and there was a kind of seizin, that is, in equity; a trust of the profits for his life; but here the father, whose estate it was, has made his daughter a feme sole, giving her the profits during her life, but not subject to the control of her *8 husband. “Then what seizin/’ said Lord Hardwicke, “had the husband in equity during the coverture? And this is essential to a tenancy by the curtesy, and would be directly contrary to the intent of the testator.” 1 Yes. Sen. Ch. R., 307.
An estate by the curtesy of England rests upon the supposed unity of existence produced by the conjugal relation. The personalty of the wife is by the marriage merged in that of her husband. She has no separate existence. She has lost her individuality by the marriage. And this tenancy comes by mere operation of law upon the death of the wife, the other requisites concurring. While it is said to rest upon no moral foundation, and is therefore properly called an estate by the mere curtesy of England, or by the favor of the law of England, yet in many of the States of this Union it is expressly enacted substantially in the words of Littleton, that “where a man taketh a wife seized in fee simple, or in fee tail general, or seized as heir in special tail, and hath issue by the same wife, male or female, born alive; albeit the issue after death, or liveth, yet if the wife dies, the husband shall hold the land during his life by the law of England.” In other States it is recognized as a fixed principle of the common law, and one of the theories of its origin is, that it was granted out of respect to the former marriage and to save the husband from falling into poverty: 1 Cruise Dig., 153; 4 Kent, 28.' But very different indeed are the relations of the husband to the separate estate of the wife. The conjugal unity which would in other cases invest the husband with *9 an interest in his wife’s lands upon the marriage, does not pertain to that relation as to the separate estate of the wife, and the reasons which would give him the control and the usufruct of the land does not apply. Because in respect to the separate estate they are to be treated as two distinct persons. Thus it is said that she is treated in a court of equity in respect to her separate estate as having interests and obligations distinct from her husband. She may sue by her next friend, or she may obtain an order to defend separately suits against her; and even if compelled to sue her husband in equity, the court may order him to make her a reasonable allowance in money to carry on a suit: 2 Kent’s Com., 150; Mix v. Mix, 1 Johns. Ch. R., 108; Druton v. Druton, Id.; and’so property settled upon the wife for her sole and separate use, either before or after marriage, and either with or without trustees, will be jealously guarded by a court of equity: Story’s Eq. Jur., s. 1379. The court will only demand to know7 if the marital right was intended to be excluded, and when this is ascertained the conjugal unity to that extent is dissolved, and the lrasband and wife in the view of a court of equity stand as strangers to each other.
But the question recurs, while the husband can take no seizin in the freehold, and have no curtesy, and stands as anqther stranger to the separate estate of his wife, can he, during the coverture and joint possession of the separate real estate, take and appropriate the crops and products of the ’soil as his own property without her consent, and are they subject to the demands of his creditors? We think not. The separate estate *10 of tbe wife in tbe soil itself, impresses tbe products thereof with the same character while under tbe control of the wife. The exclusive title to the soil draws to it the exclusive right to the usufruct thereof. The husband, with regard to the custody thereof, will be held as a trustee holding for the benefit of the wife. She may, it is true, surrender to him the property in the crops, or he may become the owner as her tenant and use and dispose of the crops as of his own property. But the mere relation of husband gives him no right. The reduction into possession of a crop grown upon the wife's separate estate, by the husband by the act of gathering and garnering the same, rests upon totally different principles from a reduction of other chattels and ohoses into possession, which are not the separate property of the wife. The possession of the husband in such case is not inconsistent with the right of the wife, but is subordinate thereto. He holds as the agent or trustee, and not in his own right. And in a court of equity she, by her next friend, may compel him to account. These doctrines necessarily result from the principles governing the conjugal relation respecting the separate property of the wife.
A contrary doctrine would defeat the very object of the separate estate. It is the usufruct, the profits, rents and products of the soil alone that gives value to the separate estate. It is the maintainance to be derived from the crops or rents and profits that constitute the motive for the settlement; without the enjoyment of these the land would be worthless. We do not say there are not cases in which the husband may *11 be treated as the owner of the crops grown npon the wife’s separate estate. The wife being, in respect to her separate property, a feme sole, may contract with him in reference to it, and such contracts a court of equity will enforce. The relation of lessor and lessee may exist between them: Story Eq. Jur., s. 1368; or she may permit him to exercise such an absolute ownership over the crops — obtaining credit upon them, and disposing of them for his own use and benefit — as to forfeit the protection of a court of equity; but such cases will stand upon their own facts. We hold that this is not one of them, as the question is raised here, upon the bill and demurrer.
In the case of Young v. Jones, it was held by this Court that when the wife rented land and made corn on it by the labor of slaves secured to her separate use, the corn belonged to the wife and was not subject to the husband’s debts: 9 Hum., 551. Judge Green, after reviewing a number of English authorities in that case, concludes that “it is clear that the residence of the husband with the wife, and his occasional possession and use of the separate property, will not entitle creditors to treat it as belonging to him; nor does the sale of one article and the purchase of another entitle the husband to the article thus acquired:” 9 Hum., 555.
The case now in judgment' presents a much stronger appeal to a court of equity in behalf of the married woman than the case last referred to. In that case the land was rented by the wife; the crop produced by the labor of slaves which were settled to her sole and separate use; and it was shown that the husband *12 was controlling tbe crop and bartering “one article for another.” But here tbe crop is produced by the wife’s hired labor, and upon land that was of her own separate estate; and' it does not appear that the husband had any connection with the production, or possession of the crop, save in having, as the wife’s agent, made the contract with her laborers. The husband may in any case. act as the agent of his wife in respect to her separate estate: Ready v. Bragg, 1 Head, 511; for they are two distinct persons in regard thereto, and no suspicion of bad faith may be predicated of such mere agency.
But it is said by the demurrer that the face of the bill shows that the court of equity has no jurisdiction of the subject, and that the complainant’s remedy is at law. We do not think so. The court of equity is the proper and peculiar forum for a married woman to vindicate her rights as to her separate estate, both in reference to her husband and his creditors: Story Eq. Jur., s. 1368. At common law, the wife, if she be injured in her person or property during the marriage, can 'bring no action for redress without the concurrence of her husband, and hence the doors of a court of equity are always thrown open to the wife, upon the idea that she can not compel her husband to join her in a suit at law. In the court of law she sues with her'husband; but in the court of equity she is independent of him, and may sue by her next friend. If, indeed, he have abjured the realm, under the English law, or be exiled, or an alien living abroad, she may sue alone; or in this country, if he be in any manner *13 eimliter mortuus, sbe may sue as a feme sole. But sbe can in no other case sue in a court of law, unless sbe be joined with her husband. If then she would bring her action of replevin for the recovery of this property, or trover for its conversion, she must have her husband to join her in the suit, which she has no means of compelling him to do. The complainant, therefore, can not be repelled from a court of equity; but having elected to vindicate her rights in that forum, it will be assumed that the exigency existed that made it necessary for her to do so, even in a case where it was not necessary that the husband should be a party defendant to the litigation, as he is in this case. It is true that the injunctive powers of a court of equity can not in general be invoked to restrain the sale of a chattel, unless under peculiar circumstances. We hold that such a case is presented when the wife is litigating with her husband or his creditors for the protection of her separate property.
The decree of the Chancellor disallowing the demurrer is affirmed; the cause will be remanded for further proceedings; and the defendant Corley will pay the costs of this Court.
Decree affirmed.